IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

MINUTE ENTRY/ORDER

FOR MATTER TAKEN UNDER ADVISEMENT

| | |
|---|---|
| Bankruptcy Judge: | Eddward P. Ballinger, Jr. |
| Case Name: | Frontier Star, LLC     Chapter 11 |
| Case Number: | 2:15-bk-09383-EPB<br>2:15-bk-09385-EPB<br>2:15-bk-14679-EPB<br>2:15-bk-14682-EPB<br>(Jointly administered under Case No. 2:15-bk-09383-EPB) |
| Subject of Matter: | Objection to Administrative Claims of CSC |
| Date Matter Taken Under Advisement: | January 4, 2017 |
| Date Matter Ruled Upon: | February 2, 2017 |

At issue is the administrative claim of CSC Trust and CSC Holdings, LLC, (collectively "CSC") relating to the lease of non-residential real property located at 4414 W. Commerce Street, San Antonio, Texas ("Commerce Street lease"). Chapter 11 Trustee P. Gregg Curry requests the Court disallow the claim because CSC is estopped from arguing the lease evidences obligations of any of the debtors in these bankruptcy cases. Alternatively, the Trustee requests

1

the Court deem the lease retroactively rejected as of August 14, 2015, the rejection date established pursuant to the Court's Order Granting Jointly Administered Debtors' First Motion to Reject Commercial Real Property Leases [docket 200]. CSC objects to disallowance and contends that the effective date for lease rejection should be February 22, 2016.

A brief recap of the history of this case is helpful. On July 27, 2015, Frontier Star, LLC, and Frontier Star CJ, LLC, filed separate Chapter 11 petitions. The Court granted joint administration of these cases on August 13, 2015. At approximately the same time, both debtors filed their first motions to reject various commercial real property leases, which included a request to reject a lease between Frontier Star CJ, LLC, and CSC. CSC filed a timely response denying it had a lease with Frontier Star CJ, LLC. Rather, the copy of the lease CSC provided evidenced that the lease in question was between CSC and MJKL Enterprise Texas, LLC, with debtor Frontier Star CJ, LLC, serving as a guarantor of lease obligations. CSC asserted that this guaranty is not an executory contract for purposes of 11 U.S.C. § 365 and, therefore, Frontier Star CJ, LLC, lacked standing to reject the lease. The jointly administered debtor filed an omnibus reply to the various rejection motions on October 8, 2015, asserting with respect to the Commerce Street lease, *inter alia*, that debtor Frontier Star CJ, LLC, was in fact the lessee by way of assignment.

A hearing was held October 13, 2015, on a variety of matters, including the motions to reject. A large portion of the hearing revolved around the difficulty presented by the fact that the two debtors listed no income, assets (other than various franchise agreements) or executory contracts in their schedules. Relevant commercial leaseholds and their related revenues and expenses were attributable to debtors' non-debtor affiliates. Debtors' only assets were the underlying agreements with the various entities' franchisors. Debtors had no employees and no

2

Case 2:15-bk-09383-EPB    Doc 1325    Filed 02/02/17    Entered 02/02/17 14:23:34    Desc
Main Document    Page 2 of 6

earnings. The Court discussed at great length with debtors' counsel and the United States Trustee the significant issues raised by proceeding with a reorganization under this organizational structure.[1]

There was also confusion as to what exactly debtors were seeking to reject. As originally presented, debtors sought to reject a number of leases to which they subsequently admitted they were not signatories. Counsel represented that debtors' interests in the leases were based on assignments between the original lessees and debtors, but acknowledged that the assignments were not novations and did not relieve the original parties to the leases from their obligations to the landlords. Counsel asserted at the October hearing that while they wished to reject the assigned leases, they did not believe these assignments themselves were executory contracts. The Court noted that even if the assignments were executory contracts subject to rejection under 11 U.S.C. § 365, doing so would only effect the interests between the assignor and assignee and not the lessor. It became quite clear to the Court that debtors had not fully ferreted out what relief they desired or the law supporting some of their requests absent action by various affiliated entities. Counsel indicated that these affiliates might be seeking bankruptcy relief in the near future and suggested these filings would resolve any organizational conundrum. The Court accepted this explanation and denied without prejudice debtors' motions to reject those leases involving lease assignments. After the October hearing, the issue of pursuing rejection of these assigned leases, such as CSC's, lay in debtors' hands.

The Court rejects the Trustee's argument that CSC is judicially estopped from asserting an administrative claim relating to the Commerce Street lease. Judicial estoppel typically applies

---

[1] For example, the Court spent much of the hearing addressing debtors' request to approve what essentially was a critical vendor motion with Meadowbrook Meat Company, whose contractual relationship was really with non-debtor, parent company Frontier Star I, LLC, and debtors' affiliated management company MIH Admin Services, LLC.

Case 2:15-bk-09383-EPB    Doc 1325    Filed 02/02/17    Entered 02/02/17 14:23:34    Desc
Main Document    Page 3 of 6

where a party's later position is (1) "clearly inconsistent" with its earlier position; (2) the "party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled;'" and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine,* 532 U.S. 742, 750-51 (2001).

Upon reviewing the record, in particular the October 13 hearing transcript, the Court cannot conclude that CSC's current position is clearly inconsistent with its earlier position. Neither CSC, nor any other similarly situated landlord, stated a view as to debtors' purported assigned leasehold rights at the hearing, other than to note that debtors had disclosed the assignments rather late. CSC is correct that the Court took the laboring oar with respect to what it viewed as problems with the rejection motions under § 365. The majority of the colloquy on this issue was between debtors and the Court and for a brief moment the UST.

Further, at the time of the hearing, Frontier Star CJ acknowledged it was not a signatory to the CSC lease, which is consistent with the position CSC urged in its objection to the motion to reject. The Court did not need to accept CSC's position. It was no longer in dispute. The real issue was whether the assignments, if valid, were executory contracts or whether the assignments otherwise granted debtors the right to reject leases to which they were not a party in the first instance.

There are additional problems with the Trustee's attempt to lay responsibility at CSC's feet. Much of the confusion regarding rejection of the CSC lease lies with the initial decision to seek bankruptcy protection for only the two subsidiaries, Frontier Star, LLC, and Frontier Star CJ, LLC. Requests to reject these leases, whose assignments were belatedly disclosed,

4

exacerbated the uncertainty. The landlords were properly provided with 14 days (until approximately August 28, 2015) to file their responses to the lease rejection motions, which CSC did. However, debtors did not file their omnibus reply disclosing the lease assignments until October 8, 2015 -- over a month after the responses were filed and well beyond the 14-day reply period. *See* Local Rule of Bankruptcy Procedure 9013-1. While the Court is critical of CSC's failure to explain at the October 13 hearing that its position had changed regarding debtors' rejection rights, it is clear that debtors' actions prevented CSC from having sufficient time to prepare, let alone file, supplemental responses. There has been no explanation for this delay.

Debtors themselves requested a delay in resolution of CSC's claims to give them time to research the legal issues raised by the Court. Neither debtors nor the Trustee ever revisited the questions raised with respect to lease assignments, despite being permitted the opportunity to do so. Within approximately a month of the October 13 hearing, Frontier Star I, LLC, and MIH Admin Services, LLC, filed for Chapter 11 relief and the four cases were ordered jointly administered. The Chapter 11 Trustee was appointed within days. While the Court appreciates the situation in which the Trustee found himself upon appointment and the large amount of work before him, the lease assignment issues should have been rather fresh in the minds of debtors' original counsel at the time of the transition. Counsel should have relayed the information to the Trustee and/or the Trustee should have discovered the issue was pending by reviewing what, at the time, was a manageable docket. The judicial estoppel doctrine is clearly not applicable to the current dispute.

The next issue is whether the Court should reject the lease retroactively and, if so, to what date. Retroactive rejection is appropriate where (1) the trustee timely moves for rejection; (2) the matter is set for hearing as soon as possible; (3) the premises are surrendered; and (4) the

5

landlord's motivations for opposing rejection appear aimed at generating an administrative claim. *In re At Home Corp.*, 392 F.3d 1064, 1070 (9th Cir. 2004).

The parties agree that the original deadline to assume or reject unexpired leases was November 24, 2015, but that the Court granted debtors' request to extend this deadline to February 22, 2016. While the Court again extended the deadline to May 21, 2016, both the Trustee and CSC agree that the Commerce Street lease was not part of the May 21, 2016, extension. The parties also agree that February 22, 2016, was the latest rejection date by operation of law for the Commerce Street lease. Nonetheless, the Trustee urges the Court to reject the Commerce Street lease as of August 14, 2015, arguing that the property is an undeveloped parcel of land never completed or occupied by the debtor and, therefore, of no value to the estate.

The Court declines to do so. The Court expressly declined to reject the lease as of August 14, 2015, at the October 13, 2015, hearing. The Court clearly gave debtors the opportunity to file supplemental briefs on the assignment/lease rejection issues as discussed at that hearing. Neither debtors nor the Trustee took the Court up on its offer. To allow rejection to that date would ignore the fact that the motion to reject was in fact already denied as of October 13, 2015. The Trustee's argument that CSC sat quietly in an effort to increase its administrative expense is not borne out by any actual evidence.

For these reasons,

IT IS ORDERED rejecting the Commerce Street lease as of February 22, 2016, the latest date both parties agree the lease was rejected by operation of law. Counsel for CSC shall lodge a form of order consistent with this ruling.

6

Case 2:15-bk-09383-EPB    Doc 1325    Filed 02/02/17    Entered 02/02/17 14:23:34    Desc
Main Document    Page 6 of 6